UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

JAY BRADSHAW,

                Plaintiff,

       − against                                                **AMENDED**

DONALD VENETTOZZI, ANTHONY RODRIGUEZ, DONALD UHLER,     **COMPLAINT**

PAUL WOODRUFF, S. DOMINIC, ALBERT GRAVLIN, WILLIAM

VESNESKE, J. FITCHETTE, REGINALD BISHOP, R. CANTWELL,

JAMES SPINNER, NICHOLAS TATRO, CRAIG ST. HILAIRE,

MARSHALL BUSH, ERIC MARSHALL, DONALD MERRICK, TRACY NELSON     **JURY TRIAL DEMANDED**

TIMOTHY KELEHER, HAUG, DUSTIN HOLLENBECK, JON AYER,

JOSEPH RUSSELL, SHELBY GADWAY, ROBERT LAMICA,

TROY MATTHIE, CASEY KEATING, JESSI GREER, MARK BAILEY,

MICHAEL BRONSON, NATHAN LOCKE, ROY HASTING, S. MARTIN,

CHAD CARTER, JEREMY TOURVILLE, BRIAN LOWNSBURY,     **21−CV−0901 (DNH)(ML)**

AUSTIN MENARD, ZEBULON TUPPER, JENNIFER TERRIAH,

JOHN MATTISON, SHERRI DEBYAH, RACHAEL SEGUIN, JASON PAIGE,

BRADON NICHOLS, FENNESSY, R. BARBOSA, HOKE, JOANNE WALDRON,

J. GRAVELL, Officer JOHN DOE, 1−4, MICHAEL TROMBLEY, CAPTAIN JOHN

DOE            Defendants.

## JURISDICTION

1.   This is a civil action seeking relief and/or damages to defend and protect the rights guaranteed
by the Constitution of the United States. This action is brought pursuant to 42 U.S.C § 1983.
The Court has jurisdiction over the action pursuant to 28 U.S.C. §§ 1331, 1343(3) and (4), and 2201.

## PARTIES

2.   Plaintiff Jay Bradshaw is currently confined at Upstate Correctional Facility (Upstate) at the address located at
P.O. Box 2001, New York 12953

3.   Defendant DONALD VENETTOZZI was the Director of Special Housing Unit ("SHU") within the
Department of Corrections and Community Supervision ("DOCCS"). He is sued in his individual capacity.

4.   Defendant ANTHONY RODRIGUEZ is the Director of SHU within DOCCS. He is sued in his individual capacity.

5.   Defendant DONALD UHLER is the Superintendent at Upstate. He is sued in his individual capacity.

6. ~~PAUL~~ Defendant PAUL WOODRUFF and REGINALD BISHOP is the Deputy Superintendent of Security at Upstate. They are sued in their individual capacity.

7. Defendant S. DOMINIC, ALBERT GRAVLIN, WILLIAM VESNESKE, and Captain John Doe are correctional captains at Upstate. They are sued in their individual capacity.

8. Defendant J. FITCHETTE is a deputy employed at Upstate. ~~they are~~ She is sued in their individual capacity.

9. Defendant R. CANTWELL was a Commissioner Hearing Officer ("CHO") employed at Upstate. He is sued in his individual capacity. Defendant S. Martin is the CHO employed at Upstate. He is sued in his individual capacity.

10. Defendant JAMES SPINNER, NICHOLAS TATRO, CRAIG ST. HILAIRE, MARSHALL BUSH, ERIC MARSHALL, DONALD MERRICK, TIMOTHY KELEHER, are correctional lieutenants and sergeants employed at Upstate. They are sued in their individual capacity.

11. Defendant JON AYER, JASON PAIGE, JOSEPH RUSSELL, SHELBY GADWAY, ROBERT LAMICA, TROY MATTHIE, CASEY KEATING, JESSI GREER, MARK BAILEY, MICHAEL BRONSON, NATHAN LOCKE, ROY HASTING, MICHAEL TROMBLEY, ~~A. MARTIN~~, CHAD CARTER, JEREMY TOURVILLE, BRIAN LOWNSBURY, AUSTIN MENARD, ZEBULON TUPPER, JENNIFER TERRIAH, JONH MATTISON and DUSTIN HOLLENBECK, JOHN DOE 1-4 are correctional officers employed at Upstate. They are sued in their individual capacity.

12. Defendant HAUG, JENNIFER TERRIAH, SHERRI DEBYAH, TRACY NELSON and RACHAEL SEGUIN are employees at Upstate Correctional Facility. They are sued in their individual capacity.

13. Defendant JOANNE WALDRON and J. GRAVELL are mental health staff employed at Upstate. They are sued in their individual capacity.

14. Defendant FENNESSY is the Superintendent at Mid-State Correctional Facility. He is sued in his individual capacity.

15. Defendant R. BARBOSA is the CHO at Mid-State. He is sued in his individual capacity.

16. Defendant HOKE is a correctional ~~lieutenant~~ lieutenant employed at Mid-State. He is sued in his individual capacity.

17. Defendant BRANDON NICHOLS is an investigator from the DOCCS New York State Inspector General Officer. He is sued in his individual capacity.

## STATEMENT OF FACTS

SHU CONFINEMENT FROM JANUARY 10, 2018 — NOVEMBER 5, 2018

18. Plaintiff had served 300 days in SHU following the disposition of three (3) separate disciplinary hearings imposed at Attica Correctional Facility. A penalty of 180 days, 60 days and 60 days, respectively, was imposed.

19. During this period of confinement, plaintiff was denied about seven (7) showers by officers from April to May 11, 2018 which resulted in plaintiff developing a skin fugus about his neck, shoulders, arms and upper torso.

20. Two, on May 15, 2018, plaintiff was attacked by another prisoner shackled to him while in transit and he sustained a 6 inch scar on his left chin; On September 28, 2018 plaintiff was attacked in a double-cell, and on October 5, 2018 plaintiff was attacked by prisoner in a double cell and sustain, inter alia, a cut to his right eye-brow.

21. Three, plaintiff began to develope stomach symptoms that caused him unusual and aggravating pains and bowel troubles.

UPSTATE

FIRST MISBEHAVIOR REPORT (November 5, 2018 — January 4, 2019)

22. On August 2, 2018, plaintiff was served a misbehavior report for violation of inmate rule 102.10 (Threats), 106.10 (Direct Order), 107.11 (Harassment), 104.13 (Disturbance), 107.10 (Interference) and 109.12 (Movement Violation).

23. Defendant Dominic conducted the disciplinary hearing, found plaintiff guilty of all charges and imposed a penalty of 60 days SHU. Defendant Uhler reviewed the hearing record and affirmed the penalty.

24. Plaintiff appealed upon the grounds that his verbal insults and impractical threats to beat the officers up when they leave f work at 3PM does not warrant 60 days SHU which was disproportionate to the non-violent offenses alleged and did not pose a threat to safety.

25. Defendant Venettozzi reviewed the hearing record and affirmed the hearing decision.

26. Based on the Settlement Agreement in Peoples v. Annucci, 11-CV-2694 (SAS) (Filed 12/16/15), Defendant Venettozzi, Uhler and Dominic were in agreement that segregated confinement shall only be issued in circumstances where plaintiff is accused

of serious offenses and demonstrates a threat to safety while in the SHU.

27. Additionally, based on plaintiff's disciplinary history, defendant Venettozzi, Uhler and Dominic, ~~was aware~~ that plaintiff was to serve three-hundred consecutive days in SHU, in addition to the sixty days imposed at this disciplinary hearing, and aware of the specific risks of serious risk of harm ~~from~~ of long-term effect of SHU confinement on plaintiff from the ~~People v Annucci,~~ Settlement Agreement in People v. Annucci, supra.

28. During this period of confinement, plaintiff reported being assaulted by defendant Hollenbeck on November 25, 2018 and, thereafter, ~~was depriv~~ Hollenbeck deprived him breakfast and lunch on each occasion that he worked, including on November 26, 2018; December 2, 7, 8, 13, 26 and 31, 2018; and January 1 and 4, 2019. Thus, plaintiff ate once every twenty-four (24) hours.

29. Consequently, plaintiff's symptoms and stomach condition continued to worsen.

SECOND MISBEHAVIOR REPORT (January 4, 2019 — September 9, 2019)

30. On September 21, 2018, plaintiff was served misbehavior report ~~by~~ charging violation for inmate rule 118.22 (Unhygienic Act), 107.10 (Interference) and threats (Threats)

31. On September 28, 2018, ~~D~~defendant Cantwell commenced the disciplinary hearing but, adjourned for plaintiff to be afforded an employee assistant.

32. On October 3, 2018, defendant Lownsbury met ~~with~~ to assist plaintiff. However, Lownsbury denied plaintiff's request for video and DOCCS' Directives for Preserving Evidence and for Urine test. Plaintiff refused to sign the employee assistant form because he was not afforded any assistance.

33. On October 9, 2018, a sergeant Fletcher threatened plaintiff and stated that he will have his officers assault plaintiff like what he witnessed done to his prior cellmate on October 2, 2018 and he directed plaintiff to be moved into ~~the~~ a double cell with the ~~last~~ prisoner who attacked him on September 28, 2018. Plaintiff was concerned for his safety and requested the presence of a lieutenant, deputy or the Superintendent.

34. In the interim, two officers appeared at plaintiff's cell and advised him of the hearing. Plaintiff informed the officers that he wish to attend the hearing but request the presence of a lieutenant, deputy or the Superintendent due to the threats by sergeant Fletcher and the concerns for his safety. The two officers left and did not return.

35. A couple minutes later, the lieutenant appeared at plaintiff's cell and assured plaintiff that he would remain present to assure his safety, and so he would not be placed in double-bunk cell with prisoner who attacked him on September 28, 2018, and that also the lieutenant said he would check about the hearing for plaintiff to attend.

36. Plaintiff was never escorted to the hearing nor advised that the hearing would be held in his absence. Defendant Cantwell found plaintiff guilty of all charges and imposed a penalty of 250 days SHU along with 250 days loss of packages, commissary and phone. In addition, two months loss of good-time, and a referral of ART Program. Plaintiff waive any and all claims relating to loss of good-time.

37. On October 19, 2018, plaintiff appealed upon the grounds that he was denied his due process right (1) to attend the hearing, (2) to an employee assistant, (3) to establish that no urine was placed in the food tray as the officer alleged, (4) to present witnesses including the second officer who was present and did not endorse the misbehavior report.

38. On November 28, 2018, defendant Venettozzi reviewed the hearing record and affirmed the decision, but failed to correct the due process violation.

39. On May 17, 2019, defendant Uhler reviewed the hearing record and affirmed the decision, but failed to correct the due process violation.

40. Based on plaintiff disciplinary history record, defendant Cantwell, Venettozzi and Uhler was aware that plaintiff served almost three hundred sixty days consecutively in SHU, and the additional two hundred fifty days imposed at this disciplinary hearing posed a serious risk of harm to plaintiff's physical and mental health. From their Settlement Agreement in Peoples v. Annucci, supra, they were aware of the effects on long-term SHU and were deliberately indifferent to effects of prolonged confinement.

41. In addition, defendant Venettozzi, Uhler and Cantwell were aware that plaintiff already was confined in SHU when the incident occurred and therefore segregated confinement shall only been issued in circumstances where plaintiff is accused of serious offenses and demonstrates a threat to safety based on their Settlement Agreement in Peoples v. Annucci, supra.

42. During this period of confinement, first, defendant Hollenbeck deprived plaintiff breakfast and lunch on January 4, 7 & 8, 2019. Two, on January 10, 2019, plaintiff was physically and sexuall assaulted by a prisoner in a double-cell. Third, plaintiff was assaulted in a double-cell by a prisoner in a double-cell. on March 5, 2019. Fourth, on March 13 & 13, 2019, plaintiff was sexually assaulted by a prisoner in a double-cell.

43.   Fifth, at Mid-State, plaintiff was sleep deprived due to officers banging on his cell ~~during~~ every half hour on each round to keep him awake, in addition to the fact that plaintiff was compelled to sleep under constant light that interfered with his sleep, from May 24, 2019 to September 9, 2019.

44.   Sixth, at Mid-State, plaintiff was denied seven (7) consecutive meals from July 27, 2019 to July 29, 2019, and five (5) consecutive meals from July 30, 2019 to August 1, 2019.

45.   Plaintiff's symptoms and stomach condition continued to worsen.

THIRD MISBEHAVIOR REPORT

46.   On October 1, 2018, plaintiff was served misbehavior report charging violation of inmate rule 106.10 (Direct Order), 109.12 (Movement Violation) and 109.45 (Refusing Double-Celling)

47.   On October 10, 2018, defendant Woodruff conducted the hearing, found plaintiff guilty of all charges and imposed a penalty of 45 days keeplock.

48.   ~~Although~~ Defendant Woodruff was aware tha plaintiff had been confined in a double-cell for more than sixty (60) days from July 12, 2018 to September 20, 2018, and that ~~plaintiff~~ unless plaintiff ~~volunteer~~ ~~to~~ ~~his shall not~~ remain in a double-cell for longer than sixty (60) days he shall be moved to a single-cell pursuant to 7 NYCRR 1701.7(d)

49.   Although plaintiff did not violate ~~violation~~ any facility rules by not volunteering for a double cell, plaintiff still is required to serve 45 days keeplock.

50.   ~~Defendant~~ based on plaintiff's disciplinary history record, defendant Woodruff was aware that plaintiff ~~have~~ had to serve three hundred and sixty consecutive days in the SHU, in addition to the fourty-five (45) days keep lock confinement, and was deliberately indifferent to the serious risk of harm ~~to plaintiff~~ the effects of prolonged confinement on ~~51.~~ plaintiff's physical and mental health.

51.   Based on the Settlement Agreement in Peoples v. Annucci, supra, defendant Woodruff was aware of the serious risk of harm but ~~disregarded the risk~~ was deliberately indifferent to plaintiff's health and safety.

FOURTH MISBEHAVIOR REPORT

52. On ~~October 2,~~ September 20, 2018, plaintiff ~~submitted~~ grievance regarding defendant Russell food tampering and harassment.

53. On October 2, 2018, plaintiff received misbehavior report issued by defendant Russell, charging violation of inmate rule 106.10 (Direct Order), 107.10 (Interference) and 109.12 (Movement Violation)

54. On October 21, 2018, defendant Dominic commenced the hearing, found plaintiff guilty of all charges except direct order, and imposed a penalty of 45 days keeplock.

55. ~~Appellant~~ Plaintiff appealed upon the grounds that (1) the video shows that Russell never appeared at his cell to give him a direct order to close the recreation pen door and, thus, can not be guilty; (2) he ~~et~~ cannot be held responsible for his cell-mate deliberate effort to keep the recreation cell door opened.

56. Defendant Uhler and Venettozzi reviewed the hearing record and affirmed the decision, but did not correct the due process ~~vict~~ violation in that ~~plain~~ the determination of guilt be supported by " some [reliable] evidence."

60. Defendant Dominic, Uhler and Venettozzi were aware that plaintiff had served more than 300 days consecutively in the SHU, ~~and~~ was to serve an additional 250 days SHU, was to serve keeplock confinement following the SHU confinement, and the 45 days keeplock imposed at this hearing.

61. Based on ~~the~~ their Settlement Agreement in Peoples v. Annucci, supra, defendant Dominic, Uhler and Venettozzi were aware of the serious risk of harm of the effects of prolonged confinement and was deliberately indifferent to plaintiff's physical and mental health.

62. Plaintiff is still expected to serve this fourty-Five (45) days keeplock.

## FIFTH MISBEHAVIOR REPORT

63. On October 5, 2018, plaintiff received a misbehavior report written by defendant St. Hilaire, charging violation of inmate rule 100.13 (Fighting). St. Hilaire issued plaintiff this misbehavior report in ~~vie~~ retaliation for reporting that he had been assaulted.

64. Defendant Spinner conducted the hearing, found plaintiff guilty of the charge and imposed

30 days keeplock.

65. Plaintiff appealed upon the grounds that he was improperly excluded in violation of his due process right.

66. Defendant ~~Spinner~~ Uhler never decided the appeal.

67. Defendant Spinner was aware — based on plaintiff disciplinary hearing record — that plaintiff have served almost 300 days consecutively in SHU, was to serve an additional SHU confinement until September 11, 2019, ~~300 days and more in the SHU,~~ and was to serve keeplock confinement ~~toll~~ until June 21, 2022, in addition to the 30 days imposed at this hearing.

68. Based on the Settlement Agreement in Peoples v. Annucci, supra, defendant Spinner was aware of the serious risk of harm of the effects of prolonged confinement and was deliberately indifferent to plaintiff's physical and mental health.

69. Plaintiff is still expected to serve this 45 days of keeplock which is ~~which was~~ disproportionate to the allege offense.

SIXTH MISBEHAVIOR REPORT

70. On October 5, 2018, plaintiff was served with misbehavior report, charging #07.10 (Interference), 106.10 (Direct Order), and 126.12 (Utensils).

71. Defendant Cantwell conducted the hearing, found plaintiff guilty of all charges and imposed a penalty of 60 days keeplock

72. Defendant Uhler reviewed the hearing record and affirmed the decision, despite that the penalty was disproportionate to the non-violent offenses plaintiff was alleged to committed.

73. Plaintiff appealed upon the ground that the 60 days keeplock was disproportionate to the offenses, and, in particular, ~~held~~ withholding a food tray as collateral for medical attention but, ~~which was~~ returned it without incident, confinement ~~should been~~ should not have ~~should have not imposed~~ imposed ~~to~~ been imposed.

74. ~~On January 6, 2020, defendant~~ defendant Venettozzi reviewed ~~Defendant Cantwell and never decided the appeal~~ the hearing record and affirmed the decision, but failed to suspend the 60 day keeplock confinement.

75. Based on plaintiff's disciplinary hearing record, defendant Cantwell, Uhler and Venettozzi

that plaintiff had served more than 300 days consecutively in the SHU, was to serve an additional SHU confinement until September 9, 2019, was to serve keeplock confinement until June 21, 2022, in addition to the 60 days imposed at this hearing.

76. Based on ~~plaintiff's disciplinary hearing record, id.~~ the Settlement Agreement in Peeples v. Annucci, supra, defendant Cantwell, Uhler and Venettozzi were aware of the serious risk of harm of the effect of prolonged confinement and were deliberately indifferent to plaintiff's physical and mental health. In addition, ~~a misbehavior report shall only been issued for offenses~~ segregated confinement in circumstances where plaintiff is accused of serious offenses that demonstrates a threat to safety.

77. Plaintiff is still expected to serve this 60 days of keeplock which is disproportionate to the offenses he was alleged to have committed.

SEVENTH MISBEHAVIOR REPORT

78. On October 9, 2018, plaintiff was served with misbehavior report charging 107.10 (Interference), 106.10 (Direct Order), and 109.15 (Refuse Double Celling).

79. On October 26, 2018, defendant Dominic conducted the hearing, found plaintiff guilty of all charges and imposed a penalty of 45 days keeplock.

80. On October 30, 2018, defendant Uhler reviewed the hearing record and affirmed the decision.

81. Plaintiff appealed upon the grounds that (1) he was threatened by sergeant Fletcher ~~to have~~ who said he would have his officers assault him [plaintiff] (2) and Fletcher ~~, and that~~ threatened to put plaintiff in double-cell with the prisoner who assaulted him on September 28, 2018, and (3) the lieutenant who appeared ~~have~~ had to designate plaintiff to another cell, and (4) the penalty was grossly disproportionate to the alleged offenses.

82. On November 29, 2018, defendant Venettozzi reviewed the hearing record and affirmed the decision.

83. Based on plaintiff disciplinary hearing record, defendant Dominic, Uhler and Venettozzi were aware that plaintiff served more than 305 days consecutively in the SHU, was to serve additional SHU confinement until September 9, 2019, was to serve keeplock confinement until September 6, 2022, in addition to the 45 days imposed at this hearing.

84. Based on the Settlement Agreement in Peoples v. Annucci, supra, defendant Dominic, Uhler and Venettozzi were aware of the serious risk of harm of the effect of prolonged confinement and

were deliberately indifferent to plaintiff's physical and mental health. In addition, a misbehavior report shall only been issued in circumstances where plaintiff was accused of serious offenses that demonstrates a threat to safety.

85. Plaintiff is still expected to serve this 45 days keeplock which is disproportionate to the offenses he allegedly committed.

## EIGTH MISBEHAVIOR REPORT

86. On November 25, 2018, plaintiff reported that defendant Hollenbeck had assaulted him upon returning from a visit by pushing him into the wall

87. On November 26, 2018, plaintiff was served with misbehavior report written by defendant Hollenbeck, charging violation of inmate rule 107.10 (Interference), 106.10 (Direct Order), 124.12 (Utensils)

88. At a re-hearing conducted by defendant Dominic on January 25, 2019, plaintiff was found guilty of all charges and a penalty was imposed of 90 days keeplock and 3 months of good time. Plaintiff waives all claims relating to loss of good-time

89. On January 28, 2019, defendant Uhler reviewed the hearing record and affirmed the decision.

90. Plaintiff appealed upon the grounds that Hollenbeck deprived him breakfast and lunch and, therefore, he withheld his cellmate tray as collateral for his meal. He returned the tray when supervisory staff would not direct for Plaintiff to be provided the meals but ordered a cell extraction instead. Plaintiff also appealed on the grounds that the penalty was grossly disproportionate to the alleged offenses.

91. On March 27, 2019, Venettozzi reviewed the hearing record and affirmed the decision.

92. Based on plaintiff disciplinary history record, defendant Dominic, Uhler and Venettozzi were aware that plaintiff serve consecutive SHU confinement from January 10, 2018 to the date of their decision on the hearing, was to serve keeplock confinement until February 1, 2023 in addition to the 90 days keeplock imposed at this hearing.

93. Based on their Settlement Agreement in Peoples v. Annucci, supra, defendant Dominic, Uhler and Venettozzi were aware of the serious risk of harm of the effects of prolonged confinement and were deliberately indifferent to plaintiff's physical and mental health. In addition, a misbehavior report shall only been issued in circumstances where plaintiff

is accused of serious offenses that demonstrates a threat to safety, ~~in addition, confinement should only be imposed for serious offenses.~~

94. Plaintiff is still expected to serve this 90 days keeplock which is disproportionate to the offenses he allegedly committed.

NINTH MISBEHAVIOR REPORT

95. On December 7, 2018, plaintiff was served with misbehavior report ~~written by de~~ charging violation of inmate rule 107.10 (Interference), 106.10 (Direct Order) and 115.10 (Search/Frisk)

96. On December 19, 2018, defendant Fitchette conducted the hearing, found plaintiff guilty of all charges and imposed a penalty of 60 days keeplock.

97. On December 21, 2018, Uhler reviewed the hearing record and affirmed the decision.

98. Plaintiff appealed upon the grounds that (1) he was being taken out the cell to attend his [unrelated] hearing — which had been reserved ~~Misbehavior Report Eighth~~ (Eighth Misbehavior Report) because plaintiff was denied the right to attend — but was harassed by the escort officer and request to be brought back in the cell until the sergeant arrive. The sergeant arrived and refused to allow plaintiff to ~~en~~ attend the hearing; ~~and~~ (2) he was denied his due process right to attend the hearing; and (3) the penalty was grossly disproportionate to the offenses allegedly committed.

99. Defendant Venettozzi never decided the appeal.

100. ~~Initially,~~ Based on plaintiff disciplinary history record, defendant Fitchette and Uhler were aware that plaintiff served consecutive SHU confinement from January 10, 2018 to the date of their hearing and decisions, was to serve keeplock confinement until September 4, 2022, in addition to the 60 days keeplock imposed at the hearing.

101. Based on their Settlement Agreement in Peoples v. Annucci, supra, defendant Fitchette and Uhler were aware of the serious risk of harm of the effects of prolonged confinement and were deliberately indifferent to plaintiff's physical and mental health. In addition, ~~a misbehavior report~~ segregated confinement shall only been issued in circumstances where plaintiff was accused of serious offenses that demonstrates a threat to safety since plaintiff was confined in SHU.

102. Plaintiff is still expected to serve this 60 days keeplock which is disproportionate to the offenses he allegedly committed.

TENTH MISBEHAVIOR REPORT

103. While at Upstate, plaintiff submitted several grievances in November and December 2018 regarding defendant Hollenbeck for harassment, retaliation and denial of meal.

104. On January 1, 2019, defendant Hollenbeck told plaintiff, simply that his grievances do not matter and it is not going to work.

105. On January 1, 2019, plaintiff received three (3) ~~several~~ misbehavior report written by defendant Hollenbeck, charging violation of inmate rules.

106. The hearing officer dismissed each misbehavior report after her ~~his~~ review of the video evidence and plaintiff's testimony that he was denied meals, which ~~that the~~ Hollenbeck omit from his reports and his wrote the reports as a means of retaliation.

ELEVENTH MISBEHAVIOR REPORT

107. On January 9, 2019, plaintiff was issued a misbehavior report charging 106.10 (Direct Order) and 112.22 (Obstruct Visibility).

108. On January 23, 2019, defendant Terriah conducted the hearing, found plaintiff guilty of the charges and imposed a penalty of 30 days keeplock confinement.

109. Plaintiff appealed upon the grounds that the officer was harassing ~~plaintiff~~ him by banging on the door on every 30 minute rounds and flashing the light directly at his ~~every~~ eyes to prevent him from sleep. And used his towel to hang on the bed to prevent the light from flashing into his eyes.

~~He.~~

110. Defendant Uhler and Venettozzi never decided the appeal.

111. Based on plaintiff disciplinary history record, defendant Terriah was aware that plaintiff served consecutive SHU confinement from January 10, 2018 to the date of ~~his deci~~ the hearing and decisions, was to serve keeplock confinement until January 2, 2023, in addition to the 30 days keeplock imposed at this hearing.

112. Based on the Settlement Agreement in Peoples v. Annucci, supra, defendant Terriah was ~~are~~ aware of the serious risk of harm of the effects of prolonged confinement and were deliberately indifferent to plaintiff's physical and

mental health.  In addition, a misbehavior report shall only been issued in circumstances where plaintiff was accused of serious offenses that demonstrated a threat to safety, ~~since plaintiff was confined in SHU.~~ segregated confinement

103.  Plaintiff is still expected to serve this 30 days keeplock which is disproportionate to the offenses allegedly committed.

## TWELTH MISBEHAVIOR REPORT

104.  On January 10, 2019, plaintiff was issued a misbehavior report charging violation of inmate rule 106.10 (Direct Order) and 112.22 (Visibility Obstruction).  The officer alleged plaintiff had his towels and hung on the bed that prevented him from viewing plaintiff.

105.  On January 22, 2019, defendant Spinner conducted the hearing in plaintiff's absence, found plaintiff guilty of both charges and imposed a penalty of 30 days keeplock.

106.  Plaintiff appealed upon the grounds that ~~his due process ri~~ he was denied his due process right to be present at the hearing by the escort officer, who shoved plaintiff along the escort, as his shoes flopped off his feet ~~which~~ that he was denied to tie them, and the officer squeezed the waist chain around his bruised ribs and aggravated his injury, and brought plaintiff back to the cell for complaining of the pain.

107.  ~~Neither Uhler or Venettozzi~~ Uhler never decided the appeal.

108.  Based on plaintiff disciplinary history record, defendant Spinner was ~~was~~ aware that plaintiff served consecutive SHU confinement from January 10, 2018 to the date of the hearing and decisions, was to serve keeplock confinement until ~~December 3~~ January 3, 2023, in addition to the 30 days keeplock imposed at this hearing.

109.  Based on the Settlement Agreement in Peoples v. Annucci, supra, defendant Spinner was aware of the serious risk of harm of the effects of prolonged confinement and ~~were~~ was deliberately indifferent to plaintiff's physical and mental health.  In addition, a ~~misbehavior~~ segregated confinement report shall only ~~issued~~ been issued against plaintiff in the SHU in circumstances where he was accused of serious offenses that demonstrates a threat to safety.

120.  Plaintiff is still expected to serve this 30 days keeplock which is disproportionate to the offenses allegedly committed.

## THIRTEENTH MISBEHAVIOR REPORT

121. On January 10, 2019, plaintiff reported that to defendant Bush that he was physically and sexually assaulted in a double-cell by prisoner.

122. On January 12, 2019, plaintiff was served misbehavior report written by defendant Bush, charging violation of inmate rule 100.13 (fighting).

123. On January 22, 2019, defendant Spinner conducted the hearing in plaintiff's absence, found plaintiff guilty of the charge and imposed a penalty of 30 days keeplock.

124. Plaintiff appealed upon the grounds that he was denied his due process right to be present at the hearing. More specifically, the escort officer would not allow plaintiff to tie his shoes, which flopped off his feet as he was being shoved along. And the officer had the waist chain squeezed around plaintiff's ribs as he twisted the chain which aggravated plaintiff bruised ribs injury, then brought plaintiff back to the cell for complaining about the pain. And, plaintiff

125. Defendant Uhler never decided the appeal.

126. Based on plaintiff disciplinary history record, defendant Spinner was aware that plaintiff served consecutive SHU confinement from January 10, 2018 to the date of the hearing and decision, was to serve keeplock confinement until November 3, 2022, in addition to the 30 days keeplock imposed at this hearing.

127. Based on the Settlement Agreement in Peoples v. Annucci, defendant Spinner was aware of the serious risk of harm of the effects of prolonged confinement and was deliberately indifferent to plaintiff physical and mental health. In addition, a misbehavior report segregated confinement shall only been issued against plaintiff while in SHU in circumstances where he was accused of serious offenses that demonstrates a threat to safety.

128. Plaintiff is still expected to serve this 30 days keeplock which is disproportionaten to the offenses allegedly committed.

FOURTEENTH MISBEHAVIOR REPORT

129. On January 11, 2019, plaintiff was served misbehavior report charging violation of inmate rule 180.14 (Urinalysis test).

130. On January 22, 2019, defendant Woodruff conducted the hearing, found plaintiff guilty

of the charge and imposed a penalty of 30 days keeplock.

131. Plaintiff appealed upon the grounds that the officer never advised him that a urinalysis test was going to be conducted. More specifically, plaintiff was in the Upstate infirmary and the officer told plaintiff to come to the door (though plaintiff was laid in the bed in pain due to his injuries) and the officer would not tell plaintiff the reason he wanted him to come to the door was for a urinalyst test.

132. On March 27, 2019, defendant Venettozzi reviewed the hearing record and affirmed the decision, but failed to correct the due process violation since the determination was not supported by "some [reliable] evidence."

133. Based on plaintiff disciplinary record history, defendant Woodruff and Venettozzi were aware that plaintiff served consecutive SHU confinement from January 10, 2018 to the date of the hearing and their decisions, was to serve keeplock confinement until February 10, 2023, in addition to the 30 days keeplock imposed at this hearing.

134. Based on the their Settlement Agreement in Peoples v. Annucci, defendant Woodruff and Venettozzi were aware of the serious risk of harm of the effects of long-term confinement and was deliberately indifferent to plaintiff physical and mental health. In addition, a misbehavior segregated confinement report shall only been issued against plaintiff while in the SHU in circumstances where he was accused of serious offenses that demonstrates a threat to safety.

135. Plaintiff still is expected to serve this 30 days keeplock which is disproportionate to the offenses allegedly committed.

FIFTEENTH MISBEHAVIOR REPORT

136. Initially, on December 21, 2018, plaintiff submitted grievance about defendant Lamica who told plaintiff's cellmate plaintiff keep filing grievances and "they will get [plaintiff] one way or another."

137. On January 16, 2019, Lamica told plaintiff the next time he write a grievance against him write R. Lamica because there are other Lamica.

138. Plaintiff received misbehavior report from Lamica charging, inter alia, 118.22 (Unhygienic Act), 104.13 (Disturbance), 107.11 (harassment), 124.16 (Messhall Violation), 107.10 (Interference) and 104.11 (Violent Conduct).

139.   At the disciplinary hearing, the hearing officer dismissed the misbehavior report following his view of the video evidence and which was supported by plaintiff's testimony that he did not throw a cup containing fluid but rather as he was defendant attempting to pass out his food tray and cup to defendant Lamica he shoved the tray back into the cell and cause the empty cup to fall off the hatch to the ground.

SIXTEENTH MISBEHAVIOR REPORT (Confinement from September 11, 2019 - September 25, 2019

140.   Initially, on December 21, 2018, plaintiff submitted grievance regarding defendant Lamica who told plaintiff's cellmate that plaintiff keep filing grievance and "they will get plaintiff one way or another."

141.   On January 14, 2019, Lamica told plaintiff next time he write a grievance against him write B. Lamica because there are others with the name Lamica.

142.   On January 22, 2019, plaintiff received a misbehavior report written by Lamica, charging violation of inmate rule 106.10 (Direct Order), 107.11 (Harassment), 104.13 (Creating Disturbance), 109.12 (Movement Violation), 107.10 (Interference) and the 102.10 (Threats).

143.   On February 19, 2019, defendant Tatro commenced conducted the hearing, plaintiff was subsequently found guilty of 106.10 (Direct Order), 107.11 (Harassment), 107.10 (Interference) and 102.10 (Threat). A penalty was imposed of 14 days SHU along with 14 days loss of packages and commissary.

144.   Plaintiff appealed upon the grounds that Lamica refused to allow plaintiff to tie his shoes which flopped off his feet as Lamica shoved him along. And by the waist chain he had squeezed around plaintiff's ribs and twisted during the escort. Plaintiff was in substantial pain and his rib injury to his ribs were aggravated, then Lamica brought plaintiff back to the cell for complaining about the that he was pain. Moreover, he was denied his due process right to attend the hearing.

145.   On April 10, 2019, defendant Defendant Venettozzi F. Venettozzi reviewed the hearing record and dismissed the charges of 107.10 (Interference) and 102.10 (Threat), but failed to correct the due process violation since the determination of guilte must be supported by some [reliable] evidence and plaintiff was not afforded his due process right to attend the hearing and to present evidence.

146.   Based on plaintiff disciplinary history record, defendant Tatro and Venettozzi were aware that plaintiff has served consecutive SHU confinement from January 10, 2018 to the date of the hearing and their decision, was to serve keeplock confinement until

February 1, 2023, in addition to the 14 days SHU imposed at this hearing.

147. Based on ~~plaintiff's a~~ their settlement Agreement in Peoples v. Annucci, supra, Jatro and Venettozzi were aware of the serious risk of harm of the effects of long-term confinement and was deliberately indifferent to plaintiff physical and mental health. In addition, a misbehavior report shall only been issued against plaintiff while in the SHU in circumstances where he was accused of serious offenses that demonstrates a threat to safety.

148. During this period of confinement, while at Mid-State, the officers banged on plaintiff's cell on every half hour round to keep plaintiff awake at night, in addition to the fact that plaintiff was ~~compld~~ compelled to sleep under constant illumination (light) that interfered with his sleep.

<u>SEVENTEENTH MISBEHAVIOR REPORT</u> (CONFINEMENT FROM September 25, 2019 to June 1, 2020)

149. On February 21, 2019, defendant Fletcher told plaintiff "Do you want to move to a double bunk cell because you keep filing grievances.

150. On February 23, 2019, defendant Bush told plaintiff "I am moving you to a double-cell on Monday because you keep filing complaints" and "the only reason you were kept in a single cell was the Protective Hatch Cover affixed to the cell.

151. On February 25, 2019, defendant Trim had the Protective Hatch Cover removed from the cell and told Plaintiff that he is being moved to a double cell, despite plaintiff request for protective custody.

152. On February 26, 2019, plaintiff threw his breakfast tray on the floor outside the cell, and spilled his lunch juice on the officer, so a protective hatch would be placed on the cell ~~where~~ and he would remain in a single cell.

153. Although ~~plaintiff~~ defendant Bush, Trim and Fletcher knew from plaintiff records that plaintiff was confined in a double-cell ~~for~~ ~~more~~ more than sixty days from June 28, 2018 to September 20, 2018, and was ~~to be place~~ not to be placed in a double ~~be~~ cell beyond sixty days unless he volunteered, ~~def~~ on February 26, 2019, defendant Fletcher directed plaintiff to be taken out of the cell — under the pretense of a search — and placed him in a double cell.

154. Plaintiff subsequently was served with misbehavior report charging violation of inmate rule 100.11 (Assault on staff), 118.22 (Unhygienic Act), 107.10 (Interference), 104.11 (Violent Conduct)

104.13 (Disturbance), 107.10 (Interference) and 106.10 (Direct Order).

155. On February March 12, 2019, defendant Woodruff commenced the hearing, subsequently found plaintiff guilty of all charges and imposed a penalty of 250 days SHU. It is worth noting that Woodruff told plaintiff that he directed plaintiff to be placed in a double cell.

156. Plaintiff appealed upon the grounds that he was denied his due process right to present evidence including mitigating evidence which he could have significantly reduced his SHU sanction. More specifically, although plaintiff admitted to spilling his juice on the officer, to have a protective hatch cover remain placed on the cell and to remain in a single cell, since he was physically and sexually assault by prisoners in a double cell and since he was did not requested protective custody to remain in a single cell, Plaintiff was denied was denied to submit grievances and complaints regarding the dysfunctional toilet in his cell which required him to flush his bowel movements individually to prevent the toilet from overflowing and the bowels from remaining in the tot toilet for days and giving a foul order odor. Lastly, the SHU Lastly, plaintiff req sanction was grossly disproportionate to the offenses allegedly committed and should be reduced.

157. On April 1, 2019, defendant Uhler reviewed the hearing record and affirmed the decision, but failed to correct the due process violation.

158. On May 29, 2019, defendant Venettozzi reviewed the hearing record and affirmed the decision, but failed to correct the due process violation.

159. Based Def on plaintiff disciplinary history record, defendant Woodruff, Uhler and Venettozzi were aware that plaintiff served consecutive SHU confinement from January 10, 2018 to the date of the hearing and their decision, in addition serve was to additional SHU confinement until September 25, 2019 in addition to the 250 days SHU imposed at this hearing. Moreover, plaintiff was to serve keeplock confinement until February 1, 2023 following the SHU confinement.

160. Based on their Settlement Agreement in Peoples v Annucci, defendant Woodruff, Uhler and Venettozzi were aware # of the serious risk of harm of the effects of long-term confinement and was deliberately indifferent to plaintiff's physical and mental health.

161. During this period of confinement, at Southport First, on October 21, 2019, plaintiff was choked by a officer to the extent that he had gasped for air. Second, on January From April 25, 20 18, 2020, plaintiff was assaulted by two officers, and denied his family visit, and denied his family visit on January 19, 2020,

Third, plaintiff was denied dinner on April 25; May 4-5, 19-25, 27, 30-31; June 1, 2020

EIGHTEENTH MISBEHAVIOR REPORT

162. On March 5, 2019, plaintiff was served a misbehavior report written by defendant Paige, charging 104.11 (Violent Conduct), 100.13 (Fighting) and 107.10 (Interference). Plaintiff was issued said report for reporting that he was assaulted and that the officers ~~eg~~ orchestrated this attack by placing the inmate in the cell ~~when place~~ <sub>instead</sub> of the cellmate who they removed when plaintiff exited the cell for a legal call. And the prisoner asked to be moved from the cell with plaintiff before attacking plaintiff.

163. On March 15, 2019, defendant Haug ~~conducted~~ <sup>commenced</sup> the hearing and said that he will adjourn to another day after plaintiff insisted that he need urgent medical care because he had been sexually assaulted. Neverther; Haug concluded the hearing in plaintiff's absence, ~~and~~ found plaintiff guilty of all charges and imposed a penalty of 90 days keeplock along with 90 days loss of packages, commissary, phone, and one month loss of good time. Plaintiff waives any ~~all~~ and all claims relating to loss of good time.

164. On March 20, 2019, defendant Uhler reviewed the hearing record and affirmed the decision, but failed to correct the due process violation.

165. Plaintiff appealed upon the grounds that he was ~~(1)~~ denied his due process right to (1) be present at the conclusion of the hearing, <sup>and</sup> (2) the penalty was grossly disproportionate to the offenses alleged to have been committed.

166. On May 15, 2019, defendant Venettozzi reviewed the hearing record and affirmed the decision, but failed to correct the due process violation.

167. Based on plaintiff disciplinary record history, defendant Haug, Uhler and Venettozzi were aware that plaintiff served consecutive SHU confinement from January 10, 2018 ~~the~~ <sup>to</sup> the date of the hearing and their decision, was to serve keeplock confinement until ~~May 2, 2019;~~ <sup>May 2, 2023,</sup> in addition to the 90 days <sub>keeplock</sub> imposed at this hearing.

168. Based on their Settlement Agreement in Peoples v. Annucci, supra, defendant Haug, Uhler and Venettozzi were aware of the serious risk of harm of the effects of long-term confinement and was deliberately indifferent to plaintiff's physical and mental health.

169. Plaintiff is still expected to serve this 90 days keeplock which was disproportionate to the offenses allegedly committed.

## NINTEENTH MISBEHAVIOR REPORT

170. On March 15, 2019, at an unrelated disciplinary hearing, plaintiff informed the hearing officer, and defendant Gallagher that he urgently need medical attention because he had been sexually assault. Plaintiff was subsequently pulled to the ground by an officer who – along and with Gallagher. dragged plaintiff on the ground back to the cell which was a half a football field in length and cause plaintiff head to hit the cell gate and immediately bleed. Plaintiff reported this excessive force.

171. Days later, plaintiff received misbehavior report written by defendant Gallagher, charging, inter alia, 106.10 (Refusing Direct Order) and 107.10 (Interference).

172. The misbehavior report was subsequently dismissed.

## TWENTIETH MISBEHAVIOR REPORT

173. On April 11, 2019, plaintiff was brought to a holding cell where he remained for couple of several hours and it did not have a restroom and the officers were not present. He therefore had to relieve his self and urinated in the holding cell.

174. Plaintiff was served a misbehavior report, charging 118.22 (Unhygienic Act).

175. On April 23, 2019, defendant Spinner conducted the hearing, found plaintiff guilty of the charge and imposed a penalty of 30 days keeplock.

176. Based on plaintiff disciplinary hearing record, defendant Spinner was aware that plaintiff served consecutive SHU confinement from January 10, 2018 to the date of his decision, was to served additional SHU confinement until June 1, 2020, was to serve keeplock confinement until July 31, 2023, in addition to the 30 days keeplock imposed at this hearing.

177. Based on the Settlement Agreement in Peoples v. Annucci, supra, defendant Spinner was aware of the serious risk of the effects of long-term confinement and was deliberately indifferent to plaintiff's physical and mental health. In addition, a misbehavior report segregated confinement shall only been issued against plaintiff while in the SHU in circumstance where he was accused of serious offenses that demonstrates a threat to safety.

## TWENTY-FIRST MISBEHAVIOR REPORT

178. On July 11, 2019, ~~defendant~~ plaintiff received misbehavior report charging violation of inmate rule 104.13 (Create Disturbance), 107.10 (Interference), 107.11 (Harassment) and 106.10 (Direct Order).

179. On July 24, 2019, defendant Hoke commenced the hearing, found plaintiff guilty of all charges and imposed a penalty of 30 days keeplock along with 30 days loss of packages, commissary and phones.

180. Plaintiff appealed upon the grounds that the penalty was grossly disproportionate to the offenses alleged. ~~offer~~ More specifically, plaintiff was brought in a holding cell for a legal call. Plaintiff asked the counselor about ~~his~~ being afforded his personal call which the counselor claimed was counted ~~along with~~ as the legal call. Plaintiff disputed such and the counselor terminated the legal call, then plaintiff use bad language toward the counselor for denying the legal call.

181. Defendant Fennessy never decided the appeal.

182. Based on plaintiff disciplinary hearing record, defendant Hoke was aware that plaintiff served consecutive SHU confinement from January 10, 2018 to the date of his decision, was to serve additional SHU confinement until June 1, 2020, was to serve keeplock confinement until ~~July~~ August 30, 2023 in addition to the 30 days keeplock imposed at this hearing.

183. Based on the Settlement Agreement in Peoples v. Annucci, supra, defendant Hoke was aware of the serious risk of the effects of long-term confinement and was deliberately indifferent to plaintiff ~~hea~~ physical and mental health. In addition, ~~a then misbehavior report~~ segregated confinement shall only been issued against plaintiff while in SHU ~~and confinement shall not been imposed~~ when ~~unless plaintiff was~~ accused of serious offenses that demonstrates a threat to safety.

184. Plaintiff is still expected to serve this 30 days keeplock which is disproportionate to the offenses allegedly committed.

TWENTY-SECOND AND TWENTY-THIRD MISBEHAVIOR REPORT (SHU Confinement From June 1, 2020 to March 28, 2021, March 28, 2021 to ~~December 4~~ September 4, 2022)

185. On July 29, 2019, plaintiff received two misbehavior report. One, charging violation of inmate rule 104.13 (Creating A Disturbance), 100.11 (Assault of Staff), 118.22 (Unhygienic Act), 107.11 (Harassment) and 102.10 (Threats). Two, charging violation of inmate rule 104.13 (Creating A Disturbance), 118.22 (Unhygienic Act), 106.10 (Direct Order)(2x), 115.10 (Search/Frisk)(2x) and 107.10 (Interference)(2x).

186. On August 8, 2019, defendant Barbosa conducted a combined hearing for both misbehavior reports, found plaintiff guilty of all charges for both misbehavior reports, and imposed a penalty ~~of 300 days SHU along with 300 days~~ for the first misbehavior report of 300 days SHU along with 300 days loss of recreation, packages and commissary and phone. For the second misbehavior report ~~of~~ 150 days SHU along with 150 days of loss of recreation, packages, commissary and phone.

187. As for the first misbehavior report, plaintiff appealed upon the grounds that the 300 days SHU was disproportionate to the offenses alleged and should be reduced. More specifically, the macaroni ~~food~~ thrown at the officer from the tray provided did not pose a serious health or safety hazard and could not have "resulted in the propagation of pathogens through ~~the facility~~ and beyond the facility," as Barbosa claimed in his decision.

188. As for the second misbehavior report, plaintiff appealed upon the grounds that the 150 days SHU was disproportionate to the offenses alleged and should be reduced. More specifically, ~~th~~ plaintiff never refused to come out of the cell for the search, he did not spit on anyone but spat in the direction of the officer who slammed his hand and held it wedged in the cell door window.

189. On August 14, 2018, defendant Fennessy reviewed the hearing record and affirmed the penalty for both misbehavior reports.

190. Defendant Venettozzi reviewed the hearing record and affirmed the penalties.

191. Based on plaintiff's disciplinary hearing record, defendant Barbosa, Fennessy and Venettozzi were aware that plaintiff served consecutive SHU confinement from January 10, 2018 to the date of their decisions, was to remain confined to SHU until June 1, 2020, in addition to ~~the~~ this 300 days and 150 days, an aggregate 450 days, ~~in SHU~~ Moreover, plaintiff was to serve keeplock confinement until ~~August 29, 2023,~~ until September 29, 2023, following the SHU confinement

192. Based on the Settlement Agreement in Peoples v. Annucci, supra, defendant Barbosa, Fennessy and Venettozzi were ~~aware that plaintiff served consecutive SHU con~~ aware of the risk of the effects of long-term confinement and was deliberately indifferent to plaintiff's physical and mental health.

193. During this period of confinement, first, on June 1-2, 12-17, 19-21, 23, 25-29, 2020, plaintiff was deprived dinner meals. ~~On July 1~~ Plaintiff was denied dinner on July 1, 2020; lunch and dinner on July 2-3, 2020; dinner on July 4-5; all meals on July 6; dinner on July 7; all meals on July 8 and dinner ~~on July 10.~~ From July 10 - July 15 plaintiff ~~was~~ missed 16 consecutive meals and was deemed on a hunger strike ~~which~~ until July 27, 2020. Moreover, plaintiff was denied dinner on July 27-31, and August 1-2, 4, 6-17, 19-25, 31, and September 1-5, 7, 9-10 14-16, 21-23, 2020.

194. Plaintiff symptoms and stomach ~~conti~~ condition worsened.

195. Second, on July 26, 2020 plaintiff was assaulted by three officers which resulted in plaintiff sustaining swelling, bruises and abrasions to his left arm extending from his wrist to his shoulder, and he suffered swelling and bruises to the left side of his face. Plaintiff has three permanant scars about his left ~~arm~~ upper shoulder.

196. Thirdly, plaintiff was denied weekly-calls from July 2020 to October 2020, except August 24, 2020, though visits were cancelled due to the pandemic.

197. Fourth, plaintiff was deprived tablet privileges to deprive which is a ~~which are pro plaintiff this~~ means of therapy for SHU prisoners.

198. During the period from May 2021 to the date of this complaint, plaintiff has ~~been~~ not been provided adequate mental health consultation and have been repeated denied mental health care while at Upstate Correctional Facility. More specifically, plaintiff informed defendant Gravell and wrote two letters explaining that his prolonged confinement in the SHU has and continue to have a detrimental ~~mer~~ effect on his mental health and asserted his need for more frequent access to mental health services. Gravell did hold a couple of brief interviews with plaintiff but has ~~utterly~~ lately not engaged plaintiff whatsoever. And defendant Waldron, the mental health unit chief, has not made a single-weekly round.

199. On July 1, 2021, plaintiff was attacked by two officers within the confines of his cell.

200. On July 12, 2021, plaintiff was assaulted on three ~~se~~ seperate incident by several officers.

201. Plaintiff was denied 9 of 12 meals from May 28, 2021 to May 31, 2021. Plaintiff was denied breakfast and lunch on June 1-2; dinner on June 5; breakfast on June 6 to June 11; breakfast and lunch on June 12-13; dinner on June 14; breakfast on June 16; breakfast and lunch on June 18, 2021; and dinner on June 20, ~~this~~ $24-26 / lunch on July 1; all meals on July 2 - July 4; dinner on July 6; breakfast and lunch on July 7; and dinner on July 9-10, 2021; breakfast on July 14, and dinner July 14, 2021.

202. From June 2021 to the date of this complaint, plaintiff was deprived of tablet privileges for filing grievances against officers ~~from~~ for assault and against defendant Gravlin and Vesneske for their actions or inactions relating to the assaults.

203. On August 6, 2021, John Doe #1 denied plaintiff legal meal.

204. Plaintiff submitted a grievance dated August 1, 2021 about Lamica who threatened plaintiff when delivering mail. On September 15 - 17, 2021 and October 6, 9-16, 18, 2020, Lamica denied plaintiff legal mails in retaliation for plaintiff filing a grievance. On September 22, 2021, Lord denied legal mail.

205. Plaintiff submitted a grievance dated July 26, 2021 about Locke who assaulted plaintiff and a second grievance regarding his effort to intimidate plaintiff on August 9, 2021. On October 7, 2021, Locke switched his post to deny plaintiff legal mail. On October 8, 2021, John Doe #2 denied plaintiff legal mail.

206. Plaintiff submitted a grievance dated October 17, 2021 about Casey Keating who pushed plaintiff in the back. On October 22 & 23, 2021, Keating switched his post and to deny plaintiff his legal mails in retaliation for plaintiff filing a grievance.

207. On November 5, 2021, defendant Ayer denied plaintiff legal mails. On December 1, 2021, defendant John Doe #3 denied plaintiff legal mail.

208. Plaintiff was denied his weekly call by Captain John Doe #4 during the week of July 18 to July 24, 2021; August 22 to August 28, 2021; November 21 to November 27 & November 28 to December 5, 2021. Defendant Orbegozo denied plaintiff a legal call with his attorney on January 20, 2022. Defendant Keleher denied plaintiff legal call with attorney on December 23, 2021.

209. Defendant Nichols monitored plaintiff's personal call and mails without proper authorization or justification from January 2019 to the present day.

TWENTY-FOURTH MISBEHAVIOR REPORT (Confinement from September 4, 2022 to December 3, 2022)

210. On May 3, 2021, plaintiff received a misbehavior report, charging violation of inmate rule 106.10 (Direct Order), 107.10 (Interference), 109.12 (Movement Violation). More specifically, the sergeant wrote, simply, plaintiff refused several direct orders to move from the doorway and force then became necessary.

211. On May 17, 2021, an officer appeared at plaintiff's cell to escort him for the hearing. The officer directed plaintiff to walk out of the cell in his socks — which is prohibited by facility rules — and when plaintiff told him that is ridiculous, he denied him to attend the hearing.

212. Defendant Cantwell held the hearing in plaintiff's absence, found plaintiff guilty of all charges and imposed a penalty of 90 days SHU and one month loss of good time. Plaintiff waive any and all claims related to loss of good time.

213. On June 14, 2021, plaintiff appealed upon the ground that he was denied his due process right (1) to an employee assistant who could have obtained video evidence to show that immediately upon getting off the bus at Upstate plaintiff was slammed against the wall, plaintiff complained to the sergeant who directed ~~that~~ the officers to lift plaintiff off his feet to remove leg shackles and to carry plaintiff threw the facility; but, then to release plaintiff after he was uncuffed.; (2) to attend the hearing and to present evidence.; and (3) the additional SHU confinement is detrimental to his mental and mental health.

214. Defendant Venettozzi reviewed the hearing record and affirmed the decision, but failed to correct the due process violation.

215. Defendant Cantwell and Venettozzi were aware of plaintiff's disciplinary history record, plaintiff was consecutively confined in SHU from January 10, 2018 to the date of their decision and was to remain confined in SHU until September 4, 2022, was to serve keeplock confinement until September 29, 2023 following the SHU confinement, in addition to the 90 days SHU imposed at this hearing. Thus, they were deliberately indifferent to the effects of long term confinement on plaintiff's physical and mental health.

TWENTY - FIFTH MISBEHAVIOR

216. On May 26, 2021, plaintiff was served a misbehavior report charging violation of inmate rule 107.10 (Interference) and 107.11 (Harassment).

217. On June 3, 2021, defendant Cantwell commenced the hearing, found plaintiff guilty of both charges and imposed a penalty of 75 days keeplock and one month loss of good time. Plaintiff waive any and all claims related to good-time.

218. Plaintiff appealed upon the grounds that he was denied his ~~right~~ due process right (1) to be present at the hearing, since he was improperly excluded for ~~not saying by tel~~ denying Cantwell's question ~~that he did not st~~ "by telling the officer his mom to suck your d*ck was that your way of asking for an assistant?"; (2) to present a defense that he never made vulgar comments to staff, who never indicated such was directed to her, and plaintiff's could not have interfered with her giving him notary that he can refuse.

219. Defendant Venettozzi reviewed the hearing decision and affirmed the results, but failed to correct the due process violations.

220. Moreover, plaintiff has a due process right pursuant to 7 N.Y.C.R.R. 301.2 (a) (Enumerate various offenses in which an incarcerated individual shall only be placed in segregated confinement) not to be subject Confinement imposed for the offenses alleged.

## TWENTY-SIXTH MISBEHAVIOR REPORT

221. On June 11, 2021, plaintiff was served misbehavior report charging 107.10 (Interference), 106.10 (Direct Order), 115.10 (Refuse Search or Frisk), and 109.12 (Movement Regulation Violation). Plaintiff was alleged of refusing to exit his cell for a cell search.

222. On July 13, 2021, defendant Terriah conducted the hearing in plaintiff's absence, found plaintiff guilty of all charges and imposed a penalty of 60 days keeplock.

223. Plaintiff appealed upon the grounds that he never refused the search, but the officer refused to open the cell door hatch to retrieve the law library tablet which was the basis of the search, when the lieutenant appeared plaintiff told him he never refused the search and then exited the cell with the lieutenant being present. Also, plaintiff was unable to attend the hearing due to his physical injuries he sustained the day prior to the hearing which resulted in him be sent to an outside hospital and the mental distress and denial of mental health services.

224. On August 4, 2021, defendant Venettozzi reviewed the hearing record and affirmed.

225. Defendant Terriah and Venettozzi are aware that pursuant to 7 N.Y.C.RR 301.2 (a) segregated confinement should not been imposed for these allege offenses. Plaintiff have a due process right to only be subjected to segregated confinement for only offenses enumerate in 7 N.Y.C.R.R. 301.2 (a).

## TWENTY-SEVENTH MISBEHAVIOR REPORT

226. On June 29, 2021, plaintiff was served misbehavior report charging 107.10 (Interference), 106.10 (Direct Order), 101.20 (Lewd Conduct) and 124.12 (Improper use Messhall Utensil). More specifically, the officer alleged that plaintiff refused to give back all messhall items and he had his penis hanging out his pants.

227. On July 12, 2021, defendant VeBneske conducted the hearing, found plaintiff guilty of all charges, except 101.20 (Lewd Conduct), and imposed a penalty of 90 days keeplock.

along with 90 days loss of recreation, commissary, packages and tablets.

228. Plaintiff appealed upon the grounds that he was denied his due process right (1) to attend the hearing since he was assaulted ~~en rou~~ by an officer en route to the hearing, and to present evidence to establish that ~~pl~~ he returned all messhall item except the pudding cup which he attempt to ~~complete~~ Finish but the officer said she will not wait and walked away, (2) the penalty was excessive and disproportionate to the allegedly offenses ~~even asse committed.

229. Defendant ~~Venettozzi~~ Rodriguez modified the ~~dism~~ hearing decision by dismissing 107.10 (Interference), ~~and~~ reduced the keeplock confinement to 30 days, and affirmed otherwise.

230. Defendant Vesneske and ~~Venettozzi~~ Rodriguez were aware that pursuant to 7 N.Y.C.R.R 301.2(a) segregated confinement shall not been imposed for any of the offenses plaintiff was found ~~for~~ guilty. Plaintiff has a due process right only to be subjected to segregated confinement for the offenses enumerated in 7 N.Y.C.R.R. 301.2(a).

## TWENTY- ~~231.~~ EIGHTH MISBEHAVIOR REPORT

231. ~~On th~~ On June 30, 2021, plaintiff received misbehavior report written by defendant Matthie, charging plaintiff with 107.10 (Interference) and 107.11 (Harassment). More specifically, Matthie alleged that he attempted to give plaintiff [employee] assistance relating to an unrelated
~~232. On July 12, 2021, defendant~~ disciplinary hearing, but plaintiff began to make harassing comments toward him.

232. The misbehavior report was issued in retaliation for plaintiff submitting a grievance ~~against~~ dated May 20, 2021 against Matthie for ~~a~~ assault on or about May 10, 2021 by repeatedly colliding ~~his~~ into plaintiff and slamming plaintiff into the wall.

233. On July 12, 2021, defendant Vesneske conducted the hearing in plaintiff's absence, found plaintiff guilty of all charges and imposed a penalty of 90 days keeplock, along with 90 days loss of recreation, commissary, packages and tablets.

234. Plaintiff appealed upon the grounds that Matthie designated himself as the employee assistant ~~–~~ because plaintiff never choose him ~~–~~ and to harass plaintiff. In addition, he was denied his due process right (1) to attend the hearing since he was assaulted by an officer en route to the hearing, and (2) to present evidence since he could not be~~en~~ charged with interference because an employee assistance is voluntary, and (3) the penalty was excessive and disproportionate to the alleged offenses.

235. Defendant ~~Venettozzi~~ Rodriguez reviewed the hearing and record and affirmed the decision, but failed to correct the due process violation.

236. Defendant Vesneske and ~~Venettozzi~~ Rodriguez were aware that pursuant to 7 N.Y.C.R.R 301.2(a) segregated confinement shall not been imposed for any of the offenses plaintiff was found guilty. Plaintiff has a due process right only to be subjected to segregated confinement for the offenses enumerates in 7 N.Y.C.R.R. 301.2(a).

## TWENTY-NINTH MISBEHAVIOR REPORT

237. On July 1, 2021, plaintiff received a misbehavior report charging 104.11 (Violent Conduct), 104.13 (Creating A Disturbance), 107.10 (Interference) and 106.10 (Direct Order) More specifically, the officer alleged that plaintiff turn in the doorway of his cell and force became necessary.

238. On July 12, 2021, defendant Vesneske conducted the hearing in plaintiff's absence, found plaintiff guilty of all charges and imposed a penalty of 120 days keeplock, along with 120 days loss of recreation, commissary, packages and tablet.

239. Plaintiff appealed upon the ground that ~~he was~~ Vesneske denied his due process right (1) to be present at the hearing, since he was assaulted by an officer ~~in~~ en route to the hearing, (2) to present video and testimony evidence, that the officer repeatedly pushed him in the back to provoke an incident then rushed him in the cell and assaulted him with a second officer, and (3) the penalty was grossly disproportionate to the offenses alleged.

240. Defendant Rodriguez modified the decision by dismissing 104.13 (Creating A Disturbance), and 107.10 (Interference), and otherwise affirmed, but failed to correct the due process violation.

## THIRTIETH ~~TWENTY-~~ MISBEHAVIOR REPORT

241. ~~On~~ On August 24, 2021, plaintiff received misbehavior report written by defendant Merrick, charging 107.10 (Interference), 107.11 (Verbal Harassment) and 101.10 (sex act). More specifically, Merrick stated he attempted to ~~grieve~~ interview plaintiff concerning a grievance and plaintiff became non-cooperative and stated "suck my ×ick", among other things.

242. On September 2, 2021, defendant Nelson conducted the hearing, found plaintiff guilty of all charges, except 101.10 (sex Offense), and imposed a penalty of 120 days keeplock.

243. Plaintiff appealed upon the grounds that Merrick shouted the substance of his grievance and stated, for the inmate population to hear, him say, the nature of plaintiff's criminal case, and he will not ever tell another man to suck him. In addition, plaintiff argued that the penalty was disproportionate to the offenses.

244. Defendant Rodriguez modified the penalty by dismissing 101.10 (Interference), and modified the penalty to 45 days keeplock.

245. Defendant Nelson and Rodriguez were aware that pursuant to 7 N.Y.C.R.R. 301.2(a) segregated shall not ~~shall not~~ confinement shall not been imposed for the offenses or offense plaintiff was found guilty. Plaintiff has a due process right to ~~suit~~ be subjected to segregated confinement only for the offenses enumerated in 7 N.Y.C.R.R. 301.2(a).

THIRTY-FIRST MISBEHAVIOR REPORT

246. On September 19, 2021, plaintiff submitted grievance against defendant Lamica for denying him legal mails and for stating he will write a misbehavior report against plaintiff saying plaintiff said "mi suck my kick".

247. On October 19, 2021, after ~~intinitially~~ initially denying plaintiff legal mails, defendant Lamica return visibly upset and stating his supervisor directed him to give the legal mails. Plaintiff will not ever tell another man to suck him.

248. On October 20, 2021, plaintiff was served misbehavior report by Lamica, charging 101.10 (sex offense), 104.13 (Creating a Disturbance), 107.10 (Interference), 107.11 (Harassment). More specifically, Lamica simply stated that he came to deliver mail and plaintiff began to yell "suck my kick" and other obsenities.

249. On November 19, 2021, defendant Cook conducted the hearing, found plaintiff guilty of all charges and imposed a penalty of loss of tablet.

250. On ~~November~~ December 27, 2021, defendant ~~Van~~ Rodriguez dismissed all charges, except 107.11 (Harassment).

THIRTY-SECOND MISBEHAVIOR REPORT

251. On October 6, 2021, plaintiff submitted grievance against defendant Keating for shoving him in the back.

252. Defendant Keating switched his post on October 21, 2021 to be as the legal mail officer and stated to plaintiff "removed your face mask so I can identify you" although plaintiff was maskless within the confines of his cell. Keating denied plaintiff's mails.

253. On October 22, 2021, defendant Keating switched his post again to be the legal mail officer to harass plaintiff and denied plaintiff his legal mails.

254. On October 23, 2021, plaintiff received two misbehavior reports. The first one, dated October 21, 2021 charging violation of inmate rule 106.10 (Direct Order), 107.11 (Harassment) and 107.10 (Interference). More specifically, Keating stated plaintiff refused direct orders to verify himself and stated "Eat my *ick as*hole". The second date October 22, 2021 for violation of 106.10 (Direct Order), 107.10 (Interference) and 107.11 (Harassment) More specifically, Keating stated plaintiff refused plaintiff refused to identify himself and stated "get away from my cell motherfucker"

255. Both misbehavior reports were dismissed. They were both false as well.

THIRTY-THIRD AND THIRTY-FOURTH MISBEHAVIOR REPORT

256. On November 1, 2021, plaintiff received misbehavior report by defendant Greer, charging 106.10 (Direct Order), 124.12 (Utensils), 107.10 (Interference), 107.11 (Harassment) and 101.10 (Sex Offense) More specifically, Greer stated plaintiff refused several direct order to return messhall trays and stated "suck my *ick."

257. Moreover, plaintiff received misbehavior report by defendant Marshall, charging 101.10 (Sex Offense), 106.10 (Direct Order), 109.12 (Movement Violation) and 104.11 (Violent Conduct). More specifically, Marshall stated plaintiff refused several direct orders to face the wall and force became necessary and he kept yelling "suck my *ick" and "shut your *ick mouth".

258. On November 9, 2021, defendant Martin conducted the hearing, found plaintiff guilty of all charges, except 107.10 (Interference), as it relate to the report by Greer, And imposed As it relate to Marshall's report, plaintiff was found guilty of all charges, except 104.11 (Violent Conduct). Martin imposed a combined penalty of 90 days SHU.

259. Plaintiff appealed both reports upon the grounds that (1) no statement therein constituted a sex offense, and thus not (2) supported by some reliable evidence," and (2) the 90 day SHU penalty was disproportionate to the alleged offenses, and should be suspended

260. On December 10, 2021, defendant Rodriguez reviewed the hearing record and affirmed the decision, but failed to correct the due process violation including dismiss the sex offense charges and suspending the SHU sanction for the any of the remaining charges which are not enumerated in 7 N.Y.C.R.R. 301.2(a) as offenses were confinement can be imposed.

261. Defendant Martin and Rodriguez were aware that the determination of guilty for the sex offense was not supported by "some [reliable] evidence", and the the remaining charges are non enumerated in 7 N.Y.C.R.R. 301.2(a) and thus would not warrant segregated confinement. They violated plaintiff due process right.

262. Moreover, defendant Martin and Rodriguez were aware that plaintiff has served consecutive SHU confinement from January 10, 2018 to the dates of their decision, and additional 0 SHU confinement until 2023, would have to serve SHU confinement imposed at this hearing, and would have to serve keeplock confinement until 2028 following his SHU confinement.

263. Based on their Settlement Agreement in Peoples v. Annucci, supra, defendant Martin and Rodriguez were aware of the serious risk of harm of the effects of prolonged confinement and was deliberately indifferent to plaintiff's physical and mental health.

## THIRTY-FIFTH MISBEHAVIOR REPORT

264. On November 16, 2021, plaintiff reported that he was assaulted by defendant Menard who had his hand slammed in the slot and wedged in the slot. Plaintiff reported such to the a sergeant and medical staff.

265. On November 18, 2021, plaintiff was served misbehavior report by Menard, charging 107.10 (Interference), 107.10 (Harassment) and 106.10 (Direct Order). More specifically, Menard reported that plaintiff refused several direct orders to return messhall trays and stated "suck a *ick"

266. In fact, Menard refused to collect plaintiff's trays until he was directed to do so by his supervisor.

267. On December 1, 2021, defendant Terriah conducted the hearing, found plaintiff of the charges and imposed a penalty of 15 days SHU.

268. Defendant Terriah was aware that plaintiff had served consecutive SHU confinement from January 10, 2018 to the date of her decision, would have to serve the SHU sanction imposed at this hearing, and would have to serve keeplock confinement until 2028.

269. Defendant Terriah was aware of the Settlement Agreement in Peoples v. Annucci, supra, and the serious risk of harm of the efforts of prolonged confinement and was deliberately indifferent to plaintiff's physical and mental health.

270. Defendant Terriah was aware that the offenses were non of which are enumerated in 7 N.Y.C.R.R. 301.2 (a) for which SHU confinement can be imposed. Plaintiff has a due process right to be subjected to SHU only for serious offenses enumerated in 7 N.Y.C.R.R. 301.2 (a).

THIRTY-SIXTH MISBEHAVIOR REPORT

271. On November 16, 2021, plaintiff submitted grievance regarding defendant Menard who slammed his hand in the feeding slot.

272. On November 21, 2021, plaintiff submitted grievance regarding Menard who issued him a false misbehavior report.

273. On December 5, 2021, plaintiff was served misbehavior report by Menard, charging 107.10 (Interference), 107.11 (Harassment), 106.10 (Direct Order) and 116.10 (Property Damage of loss). More specifically, Menard stated simply that plaintiff held his hand and food bag in the open cell hatch and refused several direct orders to remove his hand, plaintiff refused to come out the cell for a cell search. Also, he searched plaintiff cell and found paper covering the light, one underwear, shirt, and wripped and pants.

274. Menard issued the report in retaliation for plaintiff filing a grievance.

275. On December 23, 2021, defendant Terriah conducted the hearing, found plaintiff guilty of all charges and imposed a penalty of 30 days SHU and $24.88 restitution.

276. Plaintiff appealed upon the ground that Menard kept the hatch opened and walked

away saying plaintiff held the sto hatch; Menard also ~~state~~ tore plaintiff's clothing and towel. Additionally, plaintiff argued that SHU confinement was not to be issued for the offenses he was alleged of committing.

277. Defendant Rodriguez modified the decision by dismissing 107.10 (Interference) and otherwise affirmed the penalty.

278. Defendant Terriah and Rodriguez were aware that plaintiff had been consecutively confined in SHU from January 10, 2018 to the date of their decision, and was to serve additional SHU confinement until June 16, 2023 in addition to the SHU sanction imposed in this case, and was to serve keeplock confinement until 2028 following the SHU sanctions.

279. Defendant Terriah and Rodriguez were ~~are~~ also aware of the Settlement Agreement in Peoples v. Annucci, supra, and the serious risk of harm of the effects of prolong confinement and was deliberately indifferent to plaintiff's physical and mental health.

280. Defendant Terriah and Rodriguez that non of the offenses are enumerated in 7 N.Y.C.R.R. 301.2(a) for which SHU confinement can be imposed. Plaintiff has a due process right to be subjected to SHU only for serious offenses as enumerated in 7 N.Y.C.R.R. 301.2(a).

## THIRTY-SEVENTH MISBEHAVIOR REPORT

281. On December 20, 2021, plaintiff reported that defendant Bailey assaulted him by pushing and shoving him to cause him to fall ~~and injure himself~~ hitting his face against the wall and injuring himself.

282. On December 22, 2021, defendant Bailey wrote a misbehavior report charging 106.10 (Direct Order), 107.10 (Interference) and 109.12 (Movement Violation). More specifically, Bailey wrote on December 20, 2021, plaintiff was be escorted and dropped to the floor, he refused several direct orders to stand and force began necessary.

283. The misbehavior report was issued in retaliation for plaintiff reporting that he was pushed which caused his fall. The misbehavior report was dismissed.

284. Plaintiff had reported the incident to the area supervisor and medical staff.

## EFFECTS OF CONFINEMENT

285. Plaintiff has been confined in SHU for a consecutively from January 10, 2018 to February 28, 2022, a total of 1,510 days, and expected to remain in SHU until September 14, 2023 and keeplock until 2028.

286. Plaintiff's prolonged and isolated confinement in the SHU is tantamount to psychological torture and has exacerated his mental illness. More specifically, in addition to retaliatory the repeated harrassment from officers and staff at Mid-State and Upstate, plaintiff mentally suffered illness was exasperated and he suffer extreme anxiety, chronic depression, difficulty sleeping, extreme paranoia and antisocial personality disorder. This increases his risk of a mental or nervous breakdown which may resulting in long-term hospitalization for effective and consistent psychiatric treatment to maintain his stability.

287. Plaintiff suffers from a severe mental illness and has a history of mental or nervous breakdowns that had disposed him to self-harm and required his involuntary commitment in several city and state ph psychiatric hospital for effective and consistent psychiatric treatment to maintain his stability. see People v. Bradshaw, 18 N.Y. 3d 257, 259-61, 265-266 (2011)(detailing plaintiff's mental history.

288. Prolong isolation predisposes all prisoners to self harm regardless of their individual circumstance. Thus, plaintiff is in imminent danger of mental or nervous breakdown that increases his risk of self-harm.

289. Plaintiff had submitted several request for mental health services to defendant Gravell, but, following the few initial encounters, plaintiff received no further consultation, with Gravel After Plaintiff made complaints against Gravell, plaintiff did not receive no encounter with Gravell, Plaintiff has been denied adequate mental health care from May 2021 to date. and Waldron has yet to respond to any of plaintiff's complaints or to make any of her weekly rounds.

290. Additionally, plaintiff's prolonged and isolated confinement in the SHU has taken a toll on plaintiff physicall health.

291. While in the SHU plaintiff has made innumerable medical complaints regarding his stomach symptoms, condition, but was never properly examined and neither was his condition ever diagnosed or properly treated. Plaintiff has suffered substantial and constant pain in his stomach and throughout his body as a result of his condition since 2018 to date. Plaintiff remain daily in fear of his health.

## CLAIMS

292. Plaintiff assert (1) First Amendment denial of phone calls claims against defendant Captain, John Doe; (2) First Amendment interference with phone calls claim against defendant Nichols, Orbegozo and Keleher; (3) First Amendment interference with mails claims against defendant Lamica, Locke, Keating, Lord, Ayer and Nichols; (4) First Amendment retaliation claims against defendant Lamica, Russell, Hollenbeck, St. Haire Hilaire, Bush, Paige, Gallagher, Bailey, Menard, Keating, Gravlin, Locke, Vesneske; (5) Six Amendment right of counsel denial by Orbegozo and Keleher; (6) Eighth Amendment conditions-of-confinement claim based on the denial of meals against defendant Hollenbeck; (7) Eighth Amendment excessive force claims against defendants Hollenbeck, Menard, Trombley, Bailey; (8) Eighth Amendment medical indifference claims against defendant Gravell and Waldron; (9) Eighth Amendment excessive SHU confinement claims against defendant Venettozzi, Rodriguez, Uhler, Woodruff, Dominic, Hoke, Martin, Nelson, Vesneske, Tatro, Terriah, Spinner, Haug and Fitchette; and Fourteenth Amendment disciplinary due process claims against defendants Venettozzi, Rodriguez, Uhler, Woodruff, Dominic, Hoke, Martin, Nelson, Vesneske, Tatro, Terriah, Spinner, Haug and Fitchette.

## Relief Request

WHEREFORE, plaintiff requests the Court to grant the relief as follows:

  A. Issue an injunction ordering defendant Venettozzi, Rodriguez and Uhler, or their agents to:

   1. Expunge each disciplinary conviction from plaintiff's disciplinary record that was in violation of his right to due process.

  B. Award compensatory damages against all defendants, jointly and severely;

  C. Punitive damages against the individual defendants in an amount to be determined by a jury; and

  D. Such other relief as this Court shall deem just and proper.

I declare under penalty of perjury that the foregoing is true and correct.
Signed this 28 day of February, 2022.

Mr. Jay Bradshaw
Pro se Plaintiff